IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 4:22-cr-00056 |
| Plaintiff, | : | |
| vs. | : | |
| VIOREL DRAGHIA, | : | DEFENDANT DRAGHIA'S SENTENCING MEMORANDUM |
| | : | AND MOTION FOR VARIANCE |
| Defendant. | : | |

COMES NOW, the Defendant, VIOREL DRAGHIA, by his counsel F. Montgomery Brown, of the F.M. Brown Law Firm, P.L.L.C. and hereby submits the following sentencing memorandum and motion for variance:

## TABLE OF CONTENTS

ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY ........................................... 3

OFFENSE LEVEL COMPUTATION ................................................................. 3

OFFENSE CONDUCT ........................................................................... 4

OUTSTANDING RELEVANT OBJECTIONS .................................................... 6

CHARACTERISTICS OF THE DEFENDANT ................................................... 9

DEFENDANT'S ROLE IN THE OFFENSE ................................................... 11

ARGUMENT ................................................................................. 11

# TABLE OF AUTHORITIES

Cases:
Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007).............12
United States v. Booker, 543 U.S. 220, 234, 125 S. Ct. 738, 750, 160 L. Ed. 2d 621
  (2005)..........................................................................................................................12
United States v. Haack, 403 F.3d 997, 1002-1003 (8th Cir. 2005) ...................................12
United States v. Roberson, 517 F.3d at 993........................................................................13
United States v. Ruelas–Mendez, 556 F.3d 655, 657 (8th Cir.2009) ................................13

Statutes:
18 U.S.C. § 1343 ............................................................................................................2, 3
18 U.S.C. § 1349.................................................................................................................. 3
18 U.S.C.§ 3553(a) ......................................................................................................11, 12
18 U.S.C. § 3553(a)(1) ............................................................................................ 11, 12, 13
18 U.S.C. § 3553(a)(2) ............................................................................................ 11, 12, 12
18 U.S.C. § 3553(a)(6)......................................................................................................12

Other Authorities:
Fed.R.Crim.P. 11(c)(1)(A)...................................................................................................3
Fed.R.Crim.P. 32(i)(3)(B).....................................................................................................6
USSG §1B1.11.......................................................................................................................3
USSG §2B1.1.........................................................................................................................3
USSG §2B1.1(a)(1)................................................................................................................3
USSG  §2B1.1(b)(1)(G).........................................................................................................3
USSG §2X1.1 .........................................................................................................................3
USSG §2X1.1(a).....................................................................................................................3
USSG §3E1.1(a) .....................................................................................................................4
USSG §3E1.1(b) .....................................................................................................................4
USSG Chapter 5, Part A ........................................................................................................4

On or about May 16, 2020, an information was filed in the Southern District of Iowa

charging the Defendant with one count of Conspiracy to Commit Wire Fraud, occurring between

January 2019 and continuing through November of 2019, in violation of  18 U.S.C. § 1343,  by

conspiring with another (P.B.) to obtain money by means of materially false and fraudulent

pretenses and representations by concealing and omitting material facts, using and causing the use

of interstate wire in furtherance of, and in an attempt to carry out, an essential step of the scheme.

Defendant failed to disclose and concealed his agreement concerning and payment of kickbacks to P.B., an employee of Vermeer Corporation, in exchange for P.B. directing certain construction contracts at Vermeer Corporation to the Defendant's company.

The Defendant plead guilty the 1-count Information on May 16, 2022 and entered into a plea agreement with the Government, accepting responsibility for his actions, agreeing to reasonable restitution.  The Court accepted his plea of guilty on or about June 24. 2022.

## ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY

The Defendant accepts responsibility for the offense and, therefore, is eligible for a two point a reduction of guideline range.

Pursuant to the written plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(A), the government agreed to  2-point reduction for acceptance of responsibility.

### Offense Level Computation

The 2021 Guidelines Manual, incorporating all guideline amendments, was used  to determine the defendant's offense level. USSG §1B1.11.

### Count 1: Conspiracy to Commit Wire Fraud

**Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1349 is found in USSG §2X1.1, which provides that the base offense level is determined from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty. The guideline for a violation of 18 U.S.C. § 1343 (Wire Fraud) is USSG §2B1.1. That section provides that if the offense of conviction has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7 (paragraphs one and two). USSG §2B1.1(a)(1). If the loss was more than $250,000 but less than $550,000 (paragraph 41), increase by 12 levels. USSG §2B1.1(b)(1)(G).   The cumulative base offense level is 19. USSG §2X1.1(a).                                                           **19**

**Specific Offense Characteristics:** None.                                                               **0**

**Victim Related Adjustment:** None.                                                                        **0**

**Adjustment for Role in the Offense:** None.                                       <u>**0**</u>

**Adjustment for Obstruction of Justice:** None.                                    <u>**0**</u>

**Adjusted Offense Level (Subtotal):**                                              <u>**19**</u>

**Chapter Four Enhancement:** None.                                                 <u>**0**</u>

**Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).                                                           <u>**-2**</u>

**Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b).                                <u>**-1**</u>

**Total Offense Level:**                                                            <u>**16**</u>

### Criminal History Computation

The total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. According to the sentencing table in USSG Chapter 5, Part A, based upon a total offense level of 16 and a criminal history category of I, the guideline imprisonment range is 21 to 27 months.

### OFFENSE CONDUCT

Paragraph 7 of the Plea Agreement (DOC. # 14) adequately summarizes the Vermeer-related kickback scheme organized by Mr. Bradford:

Factual Basis. As a factual basis for Defendant's plea of guilty, Defendant admits the following: (a) Vermeer Corporation ("Vermeer") is a manufacturer of industrial agricultural equipment, with its headquarters, and multiple manufacturing plants located in Pella, Iowa, which is in the Southern District of Iowa. 3 (b) At all relevant times, Defendant owned, controlled, and

operated Draghia Painting & Contracting Co. ("Draghia Contracting"). Through Draghia

Contracting, Defendant sought and obtained contracts to complete work on construction projects.

(b) Defendant knew an individual identified as "P.B." and had known P.B. for several years prior

to 2019. P.B. and Defendant both had principal places of residence in or around Northern Virginia.

(c) In January 2019, Vermeer hired P.B. to oversee Vermeer construction projects, including

projects at its Pella campus. P.B.'s title was Director of Construction. In January 2019, P.B.

informed Defendant of P.B.'s new employment at Vermeer and P.B. began to send Defendant,

including via email, confidential Vermeer construction project-related information. (d) Defendant

voluntarily and intentionally had an agreement with P.B., to commit wire fraud against Vermeer

by agreeing with each other that P.B. would direct certain construction contracts at Vermeer to

Draghia Contracting and Defendant would then pay monetary kickbacks to P.B. Defendant and

P.B. used interstate wire communications in furtherance of the scheme to defraud Vermeer. (e)

One project that P.B. was overseeing for Vermeer was the construction of the "Vermeer

EcoCenter" building in Pella. P.B. and Defendant worked together to formulate proposals, or

"bids", for Draghia Contracting to complete certain work on the Vermeer EcoCenter project.

Defendant submitted these proposals to the general contractor of the project via email. Defendant

and P.B. knowingly and deliberately concealed and failed to disclose their kickback agreement to

Vermeer employees and officers and the general contractor. This concealment was material.

Specifically, the existence of their kickback agreement was material to the scheme to defraud

Vermeer because if Vermeer officials or the general contractor had known about the kickback

agreement, Draghia Contracting would not have been awarded a contract for work at Vermeer. (f)

In July 2019 Draghia Contracting was awarded a contract for masonry-related work on the

Vermeer EcoCenter. Additional work on Vermeer projects in Pella was awarded to Draghia

Contracting between July and October 2019. (g) The various proposals submitted by Defendant and contracts issued to Draghia Contracting from July through October 2019 were transmitted via email. During that time Defendant, via email, submitted invoices seeking payment for work completed under the contracts. As a result, Defendant received payments for work completed. The above-referenced emails were all interstate wire communications in furtherance of the scheme to defraud Vermeer. (h) On multiple different dates during the summer and fall of 2019, Defendant paid kickbacks to P.B. for the Vermeer construction work that had been awarded to Draghia Contracting. These kickback payments included multiple checks payable from a checking account in the name of "Viorel Draghia DBA Draghia Painting & Contracting Co." and said checks were made payable to P.B. Defendant knowingly and deliberately concealed and failed to disclose the payment of these kickbacks from Vermeer and the general contractor for the Vermeer EcoCenter project.

## OUTSTANDING RELEVANT OBJECTIONS

The Defendant raised the following relevant objections to the Presentence Investigation report, which may have no effect on restitution owed, no effect on the calculations of the advisory Guideline range and will most likely be considered by USPO as non-material.  In the event of any "disputed portion of the presentence report or controverted matter" the district court is required to rule on the dispute or determine whether a ruling is unnecessary because the matter will not affect sentencing, or because the court will not consider the matter in sentencing…" Fed.R.Crim.P. 32(i)(3)(B).

1. PAGE 2 Identifying Data:  Defendant is 61 years of age.  Defendant's wife is financially dependent upon Defendant.

2. Paragraph 16.  With respect to the last sentence, Defendant did not know that "Elliott

was instructed by Bradford that all communications with Vermeer was to go through

Bradford."

3. Paragraph 18.  Defendant objects to the phrase "significantly higher" as that concept is

in the eye of the beholder and Elliott knew what the Draghia contract price was.

Defendant admits that his contract bid was higher to include kickback portion to

Bradford consistent with the plea agreement. Second, "cost overruns" are common in

the construction industry, and project changes requested by Vermeer occasioned such

overruns, e.g. window openings changed from steel to concrete and others.  Defendant

admits that he built into change order estimates kickback percentage to Bradford.

4. Paragraph 23.  Defendant is not sure that Bradford showed Defendant the two lower bids

referenced.

5. Paragraph 26.  To the extent Paragraph 26 implies that Defendant lacked the ability to

coordinate and oversee performance of the bid, inflated as it was, Defendant objects.

Defendant had a supervisor on site and Defendant was personally present at times at the

site and Draghia construction participated in the production meetings with the general

contractor.  Subcontractors using a subcontractor is not uncommon.  The problem here is

the kickback scheme which Defendant admits.

6. Paragraph 28.  The "mobilization fee" was picked by Bradford so Bradford could get a

bigger kickback cut.

7. Paragraph 29.  Draghia's use of Midwest Masonry was not a secret to Elliott or Johnson

Construction.

8. Paragraph 32.  Defendant objects to the assertion that it is "nearly impossible to

determine the loss" from the scheme. The kickback amounts built into the contract for

Bradford reasonably establish the loss. Substantial work was performed on the contract before termination.

9.  Paragraph 33. Defendant objects to any inference that the work was not performed on the add-ons. Defendant admits the amount included kickback percentage to Bradford.

10. Paragraph 41. Defendant objects to loss calculate solely upon the difference between competing bids and the Draghia contract. But in any event, the amount of kickbacks paid in check and cash to Bradford for the Vermeer project and other relevant conduct in total exceeded $250,000.00 but less than $450,000.

11. Paragraph 57. Defendant objects to the assertion he was unqualified. Defendant objects to the assertion that his company's work was substandard.

12. Paragraph 59. Defendant quit the project before being terminated because Patriot had failed to submit change orders or pricing increase to the government due to COVID 19 cost increases.

13. Paragraph 83. Defendant follows his physician's regime and further employs homeopathic remedies with his doctor's knowledge including high vitamin intake daily, alkaline and hydrogen peroxide treatments. Copies of three December of 2020 narrative letters from his physician are attached hereto and incorporated by reference. Defendant believes that if either regime is limited or discontinued while incarcerated the cancer will return and he will perish.

14. PART F. Grounds for variance from the advisory Guideline range will be adduced prior to sentencing in Defendant's Sentencing Memorandum. These grounds may include role in the scheme, the amount of net proceeds actually received by Defendant after kickbacks to Bradford, Defendant's cooperation with the FBI pre-indictment,

Defendant's believed risks for cooperation, and additional information regarding

Defendant's prognosis and treatment necessities.

## CHARACTERISTICS OF THE DEFENDANT

The Defendant was born in July 15, 1961 in Corabia, Romania to Marian and Leana (nee

Mares) Draghia. His father was a truck driver and his mother, a home maker. He enjoyed a

normal childhood, free from domestic violence and abuse. He was jointly raised by his parents

and grandparents. Marian Draghia died in May of 2022 at age 83 from Alzheimers disease. His

mother, Leana, died in 2002 at age 58 from kidney cancer. Neither of his parents had issues with

substance abuse, mental health or criminal behaviors. He has no siblings.

After graduating from High School, the Defendant took employment at a factory building

helicopters. False information was circulated concerning the Defendant having spoken out

against his country and its president, and he was subsequently arrested by the Romanian Secret

Service, where he was detained until it was determined that he was innocent of the allegations.

Unable to return to the factory job, the Defendant decided to flee Romania. He walked at night

and sought cover during the day in the fields, while he walked the 2 day trip from Romania to

then (then) Yugoslavia border. He then traveled on foot for a month until he reached Austria,

where he turned himself in to law enforcement. He was released to a refugee camp, where he

spent the next 10 months – and met his future wife, Margit Lorencz. They married in 1987 and

were granted permission by the US Embassy to immigrate to the United States.

Once reaching the US, the Defendant and his wife initially settled in Washington, DC

where they lived for 10 months before relocating to Arlington, Virginia, then 20 miles away to

Woodbridge, Virginia, where he currently resides.  He has three adult children, only one, Christopher, age 23, who still resides with his parents.  His oldest son, Peter Draghia, age 34, also resides in Woodbridge, Virginia, and works in the insurance industry.  His only Daughter, Andrea Draghia, age 31, works as a nurse practitioner at an American Embassy in Africa.  Of his three children, only Peter has any known criminal history, none of the three have any mental health, substance abuse, or serious criminal history issues.  They are all supportive of their father.

The Defendant has been suffering from Stage IV Prostrate Cancer, in an aggressive form, since his diagnosis in September of 2017.  He continues to receive regular treatments, and must continue those treatments to stay alive. Although he has surpassed the statistical survival rate of 5 years, he has issues with new lesion growth and receives hormone injections and participates in holistic therapy in an attempt to arrest the growth of his cancer.

In addition to his medically recommended course of treatment and quarterly injections, Defendant believes in and follows an intense complementary or holistic regime that includes large daily doses of Vitamin C and D and hydrogen peroxide intake.  Whether these alternative methods or "integrative medicine" strategies work is irrelevant to Defendant.  He believes that are helping to prolong his life in combination with accepted medicine regime which he follows. Defendant, like other cancer sufferers, believes that being optimistic and positive has an effect on treatment outcomes and his survival. He is very worried that incarceration would result in cessation of his "alternative" therapies and his mental health strategies.

His wife, Magrit, who owns a construction company, has been forced to retire due to her own health problems with a heart condition and after-effects of Covid-19.

The Defendant continues to work in his contracting business with his brother-in-law building houses.  His brother-in-law pays him advances of between $4,000 and $ 6,000 a month, which he will be required to repay once the jobs are complete and the construction costs recouped.

## DEFENDANT'S ROLE IN THE OFFENSE

Defendant has not requested a role reduction under the Guidelines.  Defendant's role versus Bradford's role is properly within the realm of Section 3553(a) factors.  The known comparator, Mr. Bradford, clearly directed and formulated the scheme with respect to the Vermeer construction bid and job.  A reasonable person could infer that Mr. Bradford's association with Vermeer was largely part of his scheme from the outset.  At minimum, Mr. Bradford used his insider status at Vermeer to get the company to engage Defendant's out-of-state business to get the tornado job at a higher bid than evidently was submitted locally.  Mr. Bradford did this intending to receive secret kickback payments.

The Defendant understood the scope and structure of the kickback scheme, but it appears that Mr. Bradford fixed the amounts of the kickbacks, selected and directed Defendant on the bid amounts submitted to Vermeer. For purposes of exercising decision-making authority or influencing decision-making authority in the overall Vermeer bid process and kickback scheme, Mr. Bradford was the head of the snake. Mr. Bradford appears to stand to benefit financially at a greater amount of money than Defendant, largely for doing nothing.  Whereas Defendant had to at least organize and supervise actual work done.

## ARGUMENT

## A SENTENCE OF TIME SERVED OR PROBATION IS A SUFFICIENT BUT NOT GREATER THAN NECESSARY UNDER 18 U.S.C. §    3553(a)(1) & (2)

Given Defendant's role in the offense, the conduct of comparator Mr. Bradford, Defendant's health issues, and his extraordinary cooperation in this matter (See DOC. # 34), the district court can justify a sentence of time served or probation as the sufficient but not greater than necessary sentence in this case.

The Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 234, 125 S. Ct. 738, 750, 160 L. Ed. 2d 621 (2005), but the district court must take them into account. *United States v. Haack*, 403 F.3d 997, 1002-1003 (8th Cir. 2005)(directing the court to first consider the potential Guideline range, then discern whether traditional departure is appropriate under the Guidelines, then consider all the other factors set forth in 18 U.S.C. § 3553(a).

In fashioning a sentence that is "sufficient but not greater than necessary, [the Court must consider] the nature and circumstances of the offense and the history and characteristics of the defendant…" 18 U.S.C. § 3553(a)(1).   Additionally, the Court must consider the need for the sentence imposed, in that it should:  reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a)(2).   The district court must also "avoid unwarranted sentencing disparities among defendants with similar records who have been guilty of similar conduct". 18 U.S.C. § 3553(a)(6)

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007). After argument of the parties for appropriate sentence, the court "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* The Court "may not presume that the Guidelines range is reasonable."

*Id.* at 596-97. The Court "must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597.  After setting the sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

Thus, the final step in the determination of a defendant's sentence is to apply the factors in § 3553(a). *Roberson*, 517 F.3d at 993. The court has substantial latitude in determining how much weight to give each of the 3553(a) factors, *see United States v. Ruelas–Mendez,* 556 F.3d 655, 657 (8th Cir.2009*)*.

WHEREFORE, a sentence or probation or time served is a sufficient but not greater than necessary under 18 U.S.C. § 3553(a)(1) & (2).

Respectfully submitted,

_____ *S/ F. Montgomery Brown* _____

F. MONTGOMERY BROWN   AT0001209
F.M. BROWN LAW FIRM, P.L.L.C.
1001 Office Park Road, Suite 108
West Des Moines, Iowa 50265
Telephone: (515) 225-0101
Facsimile:  (515) 225-3737
Hskrfan@fmbrownlaw.com
ATTORNEY FOR DEFENDANT

Original Filed.

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA

CENTRAL DIVISION

CERTIFICATE OF SERVICE

I hereby certify that on 12th  Day of May, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

Copies to:


Adam Kerndt
Assistant United States Attorney
United States Courthouse Annex
110 E. Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
adam.kerndt@usdoj.gov